IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                               )<br>)<br>NOSUK KIM,                                  )<br>)<br>Defendant.                   ) | Criminal No. 4:22-cr-52 |

## POSITION OF UNITED STATES ON SENTENCING

In accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* § 6A1.2, the United States of America, through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, and D. Mack Coleman, Assistant United States Attorney, hereby represents that it has reviewed the probation office's presentence report (hereinafter "PSR") and that it does not dispute any of the facts set forth therein. For the reasons to follow, as well as those to be offered during the sentencing hearing, the United States respectfully requests that the Court impose an advisory guideline sentence of 46 months of incarceration. This is a case about an attorney (and substitute judge) who laundered millions of dollars of fraud proceeds and evaded the assessment of her income taxes. The defendant's tax fraud caused more than $869,000 in loss to the United States in just a two-year period. There was no financial exigency or reason to do any of this. On the contrary, during this same period, the defendant and her husband lived a life of luxury in their waterfront home on the James River and made substantial sums of money from the defendant's law practice, their joint real-estate holdings, and her husband's business.

BACKGROUND

On July 11, 2022, the United States charged the defendant by criminal information with two counts of the most serious tax felony in Title 26 – tax evasion in violation of 26 U.S.C. § 7201. On July 28, 2022, the defendant made her initial appearance, waived being charged by indictment, and pleaded guilty to evading the assessment of her 2015 and 2016 income taxes.  As the PSR and the Statement of Facts reveal, the defendant's conviction stems from her involvement in laundering fraud proceeds (i) from her husband's Hampton-based defense contractor, (ii) to a nominee entity in China used by her husband's business to purchase cheaper, foreign goods for contracts with the military; (iii) back to her attorney-trust account in the United States; and (iv) were subsequently withdrawn for her and her husband's personal benefit in primarily real-estate investments and holdings.  In just two tax years, the defendant laundered approximately $2.2 million and failed to report any of this taxable income on her returns.  (SOF ¶ 16, 21.)

A.      The Defendant in 2015 and 2016

In or about 2015 and 2016, the defendant was a partner in the law firm, Cowardin, Kim & Riddle, PLC, in Newport News, Virginia.  She cofounded this firm and had worked as an attorney licensed to practice in the Commonwealth of Virginia since in or about 1990.  The defendant's practice was primarily focused on immigration law, but she also worked on a diversity of other matters, including as a substitute judge in Newport News.  (SOF ¶ 2-4.)

The defendant's husband, Beyung Kim, was the sole owner and controlling manager/principal of Iris Kim, Inc., d/b/a "I-Tek," a privately held corporation based in Hampton, Virginia, the primary business of which consisted of contracting with federal government agencies (including the United States military) as a supplier of various products and merchandise, including clothing, promotional items, equipment, and other materials.  (SOF ¶ 7.)

The defendant and her husband held certain real estate interests and investments. First, CC Investments, LLC, was a holding company that was formerly owned and operated by the defendant and INDIVIDUAL 1. In or about December 2015, the defendant purchased INDIVIDUAL 1's stake in CC Investments, LLC, and became the sole owner and operator of the entity. CC Investments, LLC, was the owner of real property and a commercial building located at \*\*\* J Clyde Morris Boulevard in Newport News, Virginia. (SOF ¶ 5.) According to the PSR, the defendant's gross monthly income for the property at \*\*\* J. Clyde Morris Blvd. is approximately $3,338.71. (PSR ¶ 76.) Second, BBK Enterprises, LLC, was a holding company owned and operated by the defendant and her husband. BBK Enterprises, LLC, had multiple real estate holdings, including the real property and commercial building located at \*\*\*\*\* Jefferson Avenue in Newport News, Virginia, and the real property and commercial building located at \*\*\*\* Executive Drive, Suite \*\*, in Hampton, Virginia. (SOF ¶ 6.) According to the PSR, the defendant's gross monthly income for the property at \*\*\*\*\* Jefferson Avenue is approximately $33,659.48. (PSR ¶ 76.)

B.   Procurement Fraud by I-Tek and the Defendant's Husband

From in or about 2011 through 2018, I-Tek was awarded millions of dollars of government contracts. (SOF ¶ 8.) Pursuant to these contracts, I-Tek was subject to rules and regulations about where the contracted-for products were manufactured. I-Tek was also subject to other requirements that set aside certain contracts for service-disabled veteran owned small businesses. From in or about 2011 through 2018, I-Tek and its employees repeatedly and fraudulently violated such requirements by falsely portraying I-Tek as a legitimate service-disabled veteran owned small business ("SDVOSB") and importing products and goods that were made in China in violation of

the Buy American Act (BAA), the Berry Amendment, and the Trade Agreements Act (TAA). (SOF ¶ 9.)

One such contract was with the United States Marine Corps (USMC) for promotional items. It was awarded in or about July 2014 and terminated for cause in or about January 2017. Prior to termination, this contract involved six purchase orders for a total of $6,726,462.79 paid to I-Tek by the Defense Finance and Accounting Service (DFAS). Beyung Kim and I-Tek violated the country-of-origin requirements in the USMC contract and concealed the fact that they were supplying cheaper, foreign goods from markets like China. (SOF ¶ 10.) Another smaller contract for $141,000.00 was with the Indiana National Guard for 30,000 recruiting t-shirts that were "Made in the USA." Like with the USMC contract, Beyung Kim and I-Tek sourced these products in cheaper, foreign markets like China to inflate their profit margins. They concealed the fraud by, among other things, removing the labels reflecting the true country of origin and importing goods from China through a nominee entity. (SOF ¶ 11.)

C.   The Defendant's Involvement in the Procurement Fraud

The United States did not charge the defendant in the fraud case it brought against her husband and I-Tek. At the time, the government did not know of the defendant's role in laundering millions of dollars of proceeds through her attorney trust account.

In addition to this laundering, the defendant was an initial director of I-Tek when it was incorporated in 1995. Thereafter, she was listed as a vice president on annual reports filed with the Virginia State Corporation Commission. She also served as counsel for I-Tek in dealings with the government and others. (PSR ¶ 14.)

The defendant obtained immigration-related benefits for I-Tek employees. She prepared and filed immigration forms for two I-Tek employees (that falsely represented that the two men

4

would be employed in the United States in the field of semiconductor research) and further handled their residency petitions. These men subsequently came and worked at I-Tek and ultimately became legal permanent residents. (PSR ¶ 15.) In or about 2015, the defendant prepared and filed an immigration petition to permit Li-Ling Tu a/k/a "Vivienne Tu" to enter and live in the United States while employed at I-Tek. This individual was previously associated with I-Tek's business with Goldway International Trading, Ltd. – the very entity that the defendant and her husband laundered fraud proceeds through in China. (PSR ¶ 15.)

The defendant also formed the nominee entity, Atlantic Solar Power, Inc. (ASP). This was significant because ASP was used to conceal I-Tek's importation of Chinese goods into the United States in fulfillment of various government contracts. The goods that I-Tek purchased from China made to look as if they came from ASP – an ostensibly domestic entity on paper. The defendant listed her law firm's address as the principal office location for ASP until 2017. (PSR ¶ 16.)

The defendant also filed annual reports from 2012 through 2016 that falsely listed P.D.R. (a paralegal for the defendant's law firm) as the president of I-Tek. P.D.R. was a service-disabled veteran who I-Tek used to fraudulently apply for contracts set aside for service-disabled veteran owned small businesses (SDVOSB). P.D.R. was never actually the president or majority owner of I-Tek. She was a part-time employee at the defendant's law practice who suffered from various disabilities. When investigators came to interview the defendant's husband, employees, and P.D.R. in or about January 2016, the defendant attended some of the interviews and arranged for representation of employees. (PSR ¶ 17.)

The defendant also represented I-Tek in its dealings with certain government agencies. For example, in May 2016, the defendant protested the termination of a United States Coast Guard contract by falsely claiming that I-Tek used all due diligence and efforts to ensure its materials

5

were made in the United States. By this time, however, I-Tek had been regularly submitting false documentation in support of its scheme to import goods from China. As noted in the PSR, this protest letter followed shortly after the defendant laundered proceeds through Goldway in China in April and May 2016, the return of those funds one day later to her attorney-trust account, and the personal use of the funds by the defendant. (PSR ¶ 17.)

D.   The Defendant's Money Laundering and Tax Evasion in 2015

Between in or about May 2015 and September 2015, I-Tek received fraud proceeds from the USMC contract of approximately $2,898,183.00 in its business bank account at BB&T (last four digits 0662). (SOF ¶ 12.) These funds were proceeds obtained by I-Tek defrauding the United States – under the direction and control of the defendant's husband. As the Court will recall, Beyung Kim and his associates falsely represented that the goods being provided to the USMC were domestically manufactured and consistent with other contractual requirements. In fact, they were not.

Although the proceeds were obtained by fraud, they were nevertheless revenue of a business wholly owned and operated by the defendant's husband. Instead of simply paying himself a bonus or taking a shareholder distribution, he worked with the defendant to launder the money through a Chinese entity. Between on or about December 4, 2015, and December 9, 2015, I-Tek wired approximately $970,000.00 in a series of wire transfers to an entity in China, Goldway International Trading, Ltd. (SOF ¶ 13.) Between on or about December 8, 2015, and December 10, 2015, Goldway International Trading, Ltd., wired $969,002.00 to the defendant's attorney trust account at Cowardin & Kim, PLC. (SOF ¶ 14.)

Between on or about December 10, 2015, and December 11, 2015, the defendant used the funds wired to her trust account to:

- Purchase two cashier's checks totaling approximately $621,751.71 to pay down the principal balance on the defendant and her husband's home equity line of credit (HELOC) on their family home at ** Ferguson Cove in Newport News, Virginia.

- Buyout the interest of INDIVIDUAL 1 in CC Investments, LLC, with a $140,000.00 payment.

- Purchase a cashier's check totaling approximately $207,250.29 to pay down the principal balance on a business loan for CC Investments, LLC, which was secured by the deed of trust on a property located at *** J Clyde Morris Boulevard in Newport News, Virginia.

(SOF ¶ 15.) In sum, the defendant and her husband used this money to substantially pay down debts owed on their real estate holdings and investments. They later pulled some of this equity back out of these real-estate holdings in or about 2018 to pay attorney's fees and other expenses incurred as a result of the government's criminal investigation.

The defendant and Beyung Kim filed a 2015 Form 1040 tax return on or about October 10, 2016, and they reported $334,287.00 in taxable income. The defendant did not report any of foregoing taxable income in the approximate amount of $969,002.00. (SOF ¶ 16.)

E.  The Defendant's Money Laundering and Tax Evasion in 2016

The defendant and her husband repeated the scheme in 2016. Between in or about February 2016 and April 2016, I-Tek received fraud proceeds from the USMC contract of $1,146,855.73 and $141,000.00 in fraud proceeds from the contract for the Indiana National Guard. (SOF ¶ 17.)

Again in 2016, the defendant's husband could simply have paid himself a bonus or taken a distribution from I-Tek in order to benefit from these funds. Instead, he arranged to wire the money through China and the defendant's attorney-trust account. Between on or about April 29, 2016, and May 5, 2016, I-Tek wired approximately $1,250,000.00 to Goldway International Trading, Ltd., in China. (SOF ¶ 18.) Between on or about May 3, 2016, and May 6, 2016,

Goldway International Trading, Ltd., wired $1,249,780.00 to the defendant's attorney trust fund at Cowardin & Kim, PLC. (SOF ¶ 19.)

Between on or about May 3, 2016, and May 6, 2016, the defendant used the funds wired to her trust account to:

- Purchase four cashier's checks totaling $1,249,780.00. Approximately $1,182,780.00 of that amount was used to pay down the principal balance and a prepayment fee on a business loan for BBK Enterprises, LLC, which was secured by the deed of trust on a property located at ***** Jefferson Avenue in Newport News, Virginia.

- Pay approximately $67,000.00 toward the business loan for CC Investments, LLC, which was secured by the deed of trust on a property located at *** J Clyde Morris Boulevard in Newport News, Virginia.

(SOF ¶ 20.) In sum, the defendant and her husband again used this money to pay down debts owed on their real estate holdings and investments.

The defendant and Beyung Kim filed a 2016 Form 1040 tax return on or about October 9, 2017 and reported $472,197.00 in taxable income. Similar to 2015, the defendant did not report any of the foregoing taxable income in the approximate amount of $1,249,780.00. (SOF ¶ 21.)

F.  <u>The defendant willfully took affirmative acts to evade the assessment of her tax obligations.</u>

As set forth in count one of the criminal information filed with the Court on July 11, 2022, the defendant willfully evaded the payment of income tax due and owing by her to the United States for 2015 and 2016 by committing the following affirmative acts:

- For tax year 2015, the defendant filed a false income tax return.

- For tax year 2016, the defendant filed a false income tax return.

- In 2015, the defendant laundered approximately $969,002.00 – all of which was taxable income – through an entity in China and the defendant's attorney trust account.

- In 2016, the defendant laundered approximately $1,218,782.00 – again taxable income – through the same entity in China and her attorney-trust account.

8

- In the books and records of her law firm, the defendant did not properly account for the $2,218,782.00 that she transferred through her attorney-trust fund.

- Instead of transferring the above proceeds to her personal accounts or directly paying personal expenses, the defendant purchased a series of cashier's checks to move the proceeds out of her attorney trust fund – that is, financial instruments ostensibly drawn on the bank's assets instead of her account.

## OBJECTIONS TO THE PSR

The parties do not have any unresolved objections to the PSR.

## DISCUSSION

The United States recognizes that a sentencing court may not presume that a sentence within the advisory guideline range is reasonable; however, the guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Title 18, United States Code, Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. The United States respectfully requests that the Court impose a sentence of 46 months of incarceration (which represents a sentence at the low end of the advisory guideline range). Such a sentence strikes a proper balance between the mitigating and aggravating factors at play in this case. On the one hand, the defendant had a difficult childhood, has a history of civic contributions, and a lengthy sentence of incarceration may impact her disabled son. These considerations have pushed the United States to recommend a sentence at the low end of the advisory guideline range. A sentence of 46 months is nevertheless necessary to account for the fact that her criminal conduct was egregious, unnecessary, ostensibly motivated by greed, made possible only be the abuse of

her attorney-trust account, and represented a continuation of her earlier role in the I-Tek procurement fraud.

*First*, the nature and circumstances of the offense are extremely serious. As the advisory guidelines make clear, the amount of tax loss is the most important factor in assessing the seriousness of the tax offense because "a greater tax loss is obviously more harmful to the treasury and more serious than a smaller one with otherwise similar characteristics." U.S.S.G. § 2T1.1, background. Here, the defendant stipulated and agreed to a significant tax loss of more than $550,000, which results a base offense level of 20. (U.S.S.G. §§ 2T1.1, 2T4.1.) Unlike ordinary fraud loss, tax loss represents a fraction of the total unreported income. The Court should not overlook that the defendant and her husband laundered more than $2 million to generate the tax loss at issue of approximately $869,000. The defendant's offense level was further enhanced four levels because the offense involved the use of sophisticated means and the defendant failed to report the source of criminally derived income in excess of $10,000. U.S.S.G. § 2T1.1. These enhancements were rightly applied to the defendant. The source of the unreported income was fraud proceeds that had been internationally laundered. And the defendant's efforts to evade the assessment of these taxes was plainly sophisticated. It involved the use of nominee entities, overseas actors, her highly regulated attorney-trust account, guaranteed checks, and holding companies for real-estate investments.

*Second*, the defendant has no criminal history and the guidelines certainly credit this. But this factor cuts both ways, as the defendant committed this deliberate crime as a mature, educated adult. The defendant's criminal activity must also be viewed through the lens of her profession – that of a practicing attorney. And the guidelines do not accord any weight to this position. Virginia lawyers, as members of a self-governing profession, are to conduct themselves with professional

integrity. *See* Virginia State Bar, *Principles of Professionalism*, *available at* https://www.vsb.org/proguidelines/index.php/principles/#:~:text=Act%20at%20all%20times%20with,for%20future%20generations%20of%20lawyers (last visited December 8, 2022). The defendant's conduct in this case was, sadly, the very antithesis of integrity. In terms of the defendant's background, then, it does merge with her role in the offense. The defendant is a lawyer with extensive education and a background of decades of practice before she became involved in this offense. The defendant's age, resources, education and maturity cut both ways. The defendant committed this deliberated crime as a mature adult. It was not driven out of hubris or youthful indiscretion. The defendant, as a lawyer, clearly should have known better. The crime was not a rash or foolhardy act of someone that could not appreciate the consequences of her actions. Indeed, an element of tax evasion is that the the defendant acted willfully – that is, in violation of a known legal duty. By virtue of her profession, the defendant was uniquely positioned to know that she was violating the law. And she did it anyway. This is aggravating and calls for a significant sentence of incarceration.

*Third,* there is a need for just punishment and to protect the public from further economic harm. The defendant's conduct would have devastating effects if repeated widely. The Sentencing Commission has spoken forcefully to the circumstances of this case:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. Ch. 2, Pt. T, intro. comment.

*Fourth,* as set forth above, the defendant's role in the broader procurement fraud perpetrated by I-Tek and her husband was not limited to laundering money. She helped the I-Tek defendants create a nominee entity, ASP, to conceal the foreign source of their products. (PSR ¶ 16.) The defendant's paralegal – a service-disabled veteran – was installed as the figurehead president and owner of I-Tek. (PSR ¶ 17.) The defendant then filed false reports with the government listing her paralegal as the president of the business when she knew her husband was really in control. (PSR ¶ 17.) This had the practical effect of allowing I-Tek to take contracts away from small businesses owned by service-disabled veterans. The defendant also filed false immigration paperwork for I-Tek employees, including the Chinese National associated with Goldway – the entity that she and her husband used to launder millions through China. (PSR ¶ 15.) Finally, the defendant also represented I-Tek in protesting the government's termination of a contract for providing foreign goods in violation of the terms of its contract with the Coast Guard. (PSR ¶ 18.) The defendant filed a protest letter close in time to the money she laundered out of I-Tek in April and May 2016. The defendant's broader role in the procurement fraud is another aggravating factor when assessing the appropriate sentence for her tax evasion. Her tax crimes or laundering were not isolated incidents of this sort of behavior. She engaged in other ethically and legally questionable conduct at or around the same time.

*Fifth*, the Court should consider general and specific deterrence in fashioning a sentence for the defendant. The public should have confidence that the activities of the defendant are treated with the utmost seriousness. The community must look at the actions of the defendant and know that tax evasion cannot be tolerated. Individuals inclined to consider committing crimes like those of the defendant must be made to pause in thinking about the consequences that follow. If all defendants who engaged in this type of complex tax fraud faced was a non-custodial or short

12

sentence, there would be little incentive not to risk this type of crime. The defendant's evasion was lucrative and the risk for detection more difficult.

Deterrence under Section 3553(a) is not limited to the necessary sentence to deter the defendant from engaging in further criminal conduct (specific deterrence), but also includes consideration of deterring other potential criminals from engaging in similar conduct (general deterrence). *United States v. Phinazee*, 515 F.3d 511, 515-16 (6th Cir. 2008) ("The plain language of the statute . . . also militates against limiting the authority of the court to specific deterrence . . . . We note that this conclusion comports with the longstanding and uncontroversial practice of considering general deterrence in sentencing.") "Because economic and fraud-based crime are 'more rational, cool and calculated than sudden crimes of passion or opportunity' these crimes are 'prime candidates for general deterrence.'" *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).

*Finally*, a sentence of 46 months will not result in unwanted sentencing disparity. This is a sentence at the low end of the advisory guideline range. The guidelines specifically warn about the sentencing disparity in tax cases. U.S.S.G. § 2T1.1, background. There are a number of substantial tax cases from this district and others that support a guideline sentence of 46 months. *See, e.g.*, *United States v. Richard Yanek*, 4:21-cr-26 (E.D. Va. 2021) (48 months for tax evasion); *United States v. Kim Jenkins Brandveen*, No. 3:11-cr-149 (E.D. Va. 2011) (60 months for tax evasion). To the extent the Court is also concerned about disparity as compared to the I-Tek defendants, a sentence of 46 months is markedly less than Beyung Kim (58 months), but appropriately more than the more senior employee defendants (32 and 31 months). This is appropriate given the significant sum of money laundered by the defendant – which in total was more than any employee defendant benefited from the procurement fraud. A sentence of 46

13

months better reflects the other aggravating factors about the defendant – her pecuniary gain from the offense, the violations of her professional responsibility, etc. – that were not present with those other defendants.

## CONCLUSION

By evading the assessment of her income taxes, the defendant enriched herself at the expense of the rest of us. This was not a crime of necessity. She and her husband laundered millions of dollars to avoid paying their fair share. This was in disregard of one of her most basic obligations as a citizen of the United States. As a licensed attorney and substitute judge, the defendant knew better. For the foregoing reasons and others to be provided during the sentencing hearing, the United States respectfully requests a sentence of 46 months.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
Brian J. Samuels
D. Mack Coleman
Assistant United States Attorneys
Eastern District of Virginia
Newport News Division
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
brian.samuels@usdoj.gov
mack.coleman@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of December 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic notification of such filing to the following:

Timothy G. Clancy
Lisa A. Mallory
544 Settlers Landing Road
Hampton, Virginia 23669

I HEREBY CERTIFY that on this 8th day of December 2022, I sent a true and correct copy of the foregoing to the following by electronic mail:

Patrick H. Raible
U.S. Probation Officer
U.S. District Courthouse, Suite 1150
701 East Broad Street
Richmond, Virginia 23219

/s/
D. Mack Coleman
Assistant United States Attorney
Eastern District of Virginia
Newport News Division
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
mack.coleman@usdoj.gov