IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA

v.                                                    CRIMINAL NO: 4:22cr52

NOSUK KIM,

                Defendant.


## POSITION OF PARTIES WITH
RESPECT TO SENTENCING FACTORS

**NOW COMES** the Defendant, **NOSUK KIM**, by counsel, pursuant to § 6A1.2 of the

Sentencing Guidelines and Policy Statements and the Court's Sentencing Procedures Order, and

hereby advises that she has no objections to and does not dispute any facts or factors material to

sentencing in the presentence report filed herein.  Further, the Defendant hereby sets forth her

position with respect to the sentencing factors and her motion for a variance sentence.

### The 18 U.S.C. § 3553 Factors as Applied to this Case

The sentencing guidelines herein call for a sentencing range of 46-57 months.  For the

reasons set forth below, the Defendant is asking for a variance sentence.

1.      **Nature and circumstances of the offense**.

The Defendant's husband and others were indicted in the related case of United States v. Iris

Kim, Inc., a/k/a "I-Tek", Criminal No.: 4:20cr 47 (E.D. Va. 2020).  During May to September of

2015, the illegal activities of the defendants in the I-Tek case resulted in fraudulent proceeds in

excess of $2.8 million being generated.  In December 2015, I-Tek wired approximately $970,000.00

to Goldway International Trading, Ltd. in China.  Shortly after the foregoing wire transfers occurred,

Goldway International Trading, Ltd, wired $969,002.00 to the Defendant's attorney trust account at the law firm where she was a partner.  These monies were used for the benefit of the Defendant and her family.  The Defendant's 2015 Form 1040 tax return failed to report the $969,002.00 in her taxable income.

Similarly, during February to April 2016, I-Tek received additional fraud proceeds in excess of $1.2 million as a result of the illegal activities of the defendants in the I-Tek case.  Between April and May 2016, I-Tek wired funds, this time approximately $1,250,000.00, to Goldway International Trading, Ltd. in China.  Shortly after the wire transfers occurred, Goldway International Trading, Ltd. wired $1,249,780.00 to the Defendant's attorney trust account at the law firm where she was a partner.  These funds were used for the benefit of the Defendant and her family.  The Defendant's 2016 Form 1040 tax return failed to report the $1,249,780.00 in her taxable income.

As a result of the under-reporting of her income in both 2015 and 2016, the Defendant's total tax liability was $868,924.54 lower than it should have been.

2.   **History and Characteristics of the Defendant**.

Kim is 61 years old.  She was born in South Korea where she lived with her parents and three brothers.  While her family was in South Korea, her basic needs were met.  There was domestic abuse in the household, primarily between her parents.  The physical abuse from both parents extended to the children, including the Defendant, but the brunt of the abuse was borne by Kim's older brother.  Both of her parents consumed alcohol to excess on occasion.  Kim experienced anxiety as a child, in part, due to her father's unpredictability as a result of his temper.  She was also required to travel as an eight-year-old child via bus to go to her maternal grandmother's home when her mother was visiting there.  As noted in the pre-sentence report, Kim got lost on more than one

2

occasion making this trip.  (PSR ¶ 53).

When Kim was ten (10) years old, her family relocated to the United States.  Initially, Kim's father was employed as a welder (both in South Korea and after coming to the United States).  He continued in this line of work until 1983 when he began operating Ike's Market in Hampton, Virginia.  Around this same time, the early 1980s, Kim's mother operated a restaurant named Ike's Place in Norfolk.  The restaurant was sold to a relative in 1983 so Kim's family could focus on the grocery store.  During this time (in 1983), the Defendant's oldest brother was killed in a car accident in Georgia.  Kim was required to work in the grocery store not only performing physical labor but also acting as a translator for her parents to assist them in setting up and running the business.

After relocating to the United States, the Defendant's basic needs continued to be met. Unfortunately, the physical abuse continued in this country, but as in Korea the police were never called to intervene.  Kim was also the victim of verbal abuse from her mother.  During one poignant incident when Kim was helping in the grocery store, a customer was shopping with her child.  The Defendant's mother complimented the shopper's child, saying how beautiful the child was.  When the shopper reciprocated and said that Kim was beautiful too, the Defendant's mother said, "Her - no she is ugly" right in front of Kim.   Despite the physical and verbal abuse, Kim felt loved by her parents, and they took care of her and her brothers.

Kim's parents stressed the importance of education to her and her siblings.  Growing up, the Defendant was shy and did not go out a lot.  Kim's parents placed more restrictions on her than they did her brothers because she was female.   Due to cultural issues, Kim was not permitted to play sports even though her brothers did.  Financially, the family could not afford to put her into other extra-curricular type activities.  Kim graduated from Warwick High School in Newport News in

1979.  She graduated from the College of William and Mary in Williamsburg in 1983 with a Bachelor of Business Administration with a concentration in Accounting.  In exchange for helping her parents with the family businesses, the Defendant's father financially helped her with law school. Defendant graduated from the Suffolk University Law School in Boston, Massachusetts in 1989.

 Kim not only acted as a translator for her parents in their business, but she also helped them in their personal lives.  She took care of their bills and with doctors' appointments.  She took on a lot of responsibilities as a young adult due to her parents language limitations, including completing the paperwork for her brother Phil to attend school and attending his parent-teacher conferences. When she was 15-16 years old, she began interpreting for others outside of their family.

The Defendant married Beyung Kim in 1991.  They have four children - Seung, Iris, Benjamin, and Brandon.  Seung is the Kims adopted son.  He is the nephew of Mr. Kim.  They adopted him when his parents who lived in South Korea divorced and Seung began having trouble with his parents and in school.  Both Mr. Kim and Seung were defendants in the related I-Tek case. Mr. Kim is currently incarcerated in Morgantown, West Virginia.  He is scheduled to be released in July 2024.  Seung completed his term of incarceration and was released on January 14, 2022.  Iris is working and lives in Washington, D.C.  Brandon is a senior in college in New York.

Kim's remaining child is Benjamin ("Ben") who is 28 years old and autistic.  He is considered disabled and receives government assistance as such. He has an aide who helps with him Monday through Friday.  Normally, when the worker is not with Ben, Ben is with the Defendant. If Kim has to work on weekends he goes to the office with her.  They walk their dog together.  They watch movies together.  As one of the letters put it, Kim is Ben's person.  Kim has tried to explain to Ben that she will be going away as a result of her criminal conduct.  He cannot seem to

comprehend what she is telling him.  He simply points at the calendar and says "you come back [and points to the next day on the calendar]."  Kim continues to explain to Ben that she is leaving and to make arrangements for his care while she is away.  It is likely that Ben will regress as a result of Kim's incarceration.  The fact that her conduct will negatively affect her child has been one of the hardest aspects of her situation to accept.

As indicated in the pre-sentence report in paragraphs 72-73 and in multiple character letters, Kim along with the Abbitt family established a school for autistic children on the Peninsula when she found there was not an adequate educational institution for children like Ben.  Kim gave not only financially to this institution to get it up and running, but also gave her time.  The school thrives today and is now known as the Peninsula School at the Faison Center.

When Kim completed law school, she initially worked for the Federal Bureau of Investigations.  As indicated in the letter her daughter wrote, Kim left this position because of a supervisor who openly made racist remarks about her (and others).  She left this position after approximately two years and returned to the Hampton Roads area where she entered into private practice.  In 2002, Kim began Corwardin & Kim where she focused her practice on Immigration law.  As indicated in several of the letters provided herein, Kim not only provided necessary legal services for her clients, she also became friends with many of them.  She frequently lectured at CLEs.  She was an active member in the Greater Peninsula Women's Bar Association where she mentored younger female lawyers.  Predictably, as a result of the conviction in this case, the Defendant surrendered her law license on August 5, 2022 and systematically closed her law practice.  The letter from Mr. Small indicates all of the steps Kim was required to take, and did take, to properly wrap up her practice with as little disruption to her clients as was possible.

5

Counsel has attached hereto forty-three (43) letters from Kim's family, friends, and colleagues to provide the Court with insights into the kind of person Kim is apart from the instant offense.  Counsel has also attached a letter from Kim's counselor that discusses the issues as discussed in Section 6 below that she has addressed with the Defendant during treatment.  These letters present an interesting dichotomy - an educated woman who was a zealous advocate for her family and clients yet was subservient to her husband's overbearing personality.

      3.    **Seriousness of the Offense**.

The offenses at conviction are obviously serious; however, it is important to emphasize that Kim admitted her guilt and accepted responsibility for her actions.

      4.    **Need to Deter Future Criminal Conduct**.

There is a need for the sentence imposed herein, as in all cases, to deter future criminal conduct.  The sentencing guidelines call for a sentencing range of 46-57 months.  Counsel would respectfully submit that a sentence could be imposed well below the guideline range that would be sufficient to deter Kim's future criminal conduct.  In this case, the Defendant has the added factors of  shame, humiliation and loss of her law license and her law practice to also deter any future criminal conduct on her part.  Counsel would respectfully submit that a sentence could be imposed well below the guideline range that would be sufficient to deter Kim's future criminal conduct.

      5.    **Need to Protect the Public from the Defendant's Future Criminal Conduct**.

Kim is sixty-one years old.  She has no prior criminal history.  Thus, her criminal history category is I.  Counsel would respectfully submit that a sentence well below the guideline range could be imposed that would protect the public from the Defendant's future criminal conduct.  The Defendant has already surrendered her law license and lost her law practice which is a substantial

penalty.  There is nothing to indicate that she is not a candidate who can be rehabilitated and return to being a law abiding citizen who is a productive, contributing member of the community.

 6. **Need to Provide Training, Medical Care, or Correctional Treatment to Defendant**.

Kim already has a law degree although she surrendered her law license.  She also has a Bachelor of Business Administration with a concentration in Accounting.  As indicated in PSR paragraphs 68-69, the Defendant has never used any illegal drugs.  However, she did drink alcohol daily for the past ten (10) years, drinking up to four glasses of wine plus a beer per sitting.  Given the quantity of alcohol she consumed and the fact that she "looked forward to being home and pouring a glass of wine" she would benefit from alcohol treatment.

Overall, Kim is healthy, but she does suffer from type 2 diabetes, hypertension, high cholesterol and tension headaches.  She takes medication for the hypertension, cholesterol and headaches.  She has also been diagnosed with depression and anxiety.  She is prescribed Zoloft for these conditions.  Kim began seeing a therapist as a result of the instant charges to assist her in coping with her situation.  She has also discussed her alcohol usage and cravings with her therapist in an effort to comply with the Court's prohibition on alcohol usage as a condition of her bond. The Defendant would benefit from continued counseling to address her depression and anxiety and her alcohol dependency.

 7. **Need to Avoid Unwanted Disparities**.

Nosuk Kim was involved in failing to report taxable income that resulted from the criminal activities of others in a related case.  The Defendant is the sole defendant in her case.  There were a total of seven (7) defendants in the related case of United States v. Iris Kim, Inc., a/k/a "I-Tek",

Criminal No.: 4:20cr 47 (E.D. Va. 2020). All of the arrested defendants from the related case have been sentenced. Counsel created a chart summarizing the related defendants, their crimes at conviction and their respective sentences which is attached hereto on page 11 and made a part hereof. Finally, counsel would point out that every defendant and their specific offense conduct is unique, and the Court's sentence should reflect that.

Conclusion

In determining what sentence to impose upon a particular defendant the factors to be considered pursuant to 18 U.S.C. § 3553(a) include the following:

> (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution.

Rita v. United States, 551 U.S. 338, 347-48 (2007); see also  Kimbrough v. United States, 552 U.S. 85, 101 (2007). Additionally, 18 U.S.C. § 3553(a) directs the sentencing court to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing as set forth above. 18 U.S.C. § 3553(a). Furthermore, in reaching its sentencing decision, the sentencing court "may not presume that the Guidelines range is reasonable." Nelson v. United States, 555 U.S. 350 (2009) (per curiam); Gall v. United States, 552 U.S. 38, 50 (2007); see also Rita, 551 U.S. at 351; United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007). The court "must make an individualized assessment based on the facts presented." Rita, 551 U.S. at 50. It is axiomatic that "the sentencing judge [is] to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gall, 552 U.S. at 52 (quoting Koon v. United States, 518 U.S. 81, 98 (1996)).

8

In this case, the guideline range for the Defendant is 46 to 57 months. As indicated above, it is the Defendant's position that a variance sentence is appropriate. Specifically, the Defendant is asking that she be sentenced to a sentence well below the guideline range. One of the issues that came up while trying to resolve objections to the pre-sentence report is the fact that the Defendant is receiving a two-point enhancement for sophisticated means under U.S.S.G. § 2T1.1 as well as a two-point enhancement under § 3B1.3 for special skill. In <u>United States v. Vizcarra</u>, 668 F.3d 516, 525 fn. 3 (7th Cir. 2012), the Seventh Circuit Court of Appeals noted that in cases where double counting occurs, it is not inappropriate to apply both enhancements, but the double counting can serve as a basis for a variance sentence if the double counting results in the guidelines being too harsh. Defendant would respectfully submit that applying both enhancements in this case results in the Defendant's guidelines being too harsh. Additionally, under the facts of this case, counsel would suggest that a sentence well below the sentencing guideline range would be "sufficient, but not greater than necessary" to accomplish the goals of sentencing set forth in 18 U.S.C. § 3553(a).

**WHEREFORE**, the Defendant respectfully requests to be heard on this issue at sentencing.

Respectfully submitted,
NOSUK KIM

By: /s/ Timothy G. Clancy
Of Counsel

Timothy G. Clancy (VSB #25117)
Counsel for Defendant Nosuk Kim
CLANCY & WALTER, P.L.L.C.
544 Settlers Landing Road
Hampton, Virginia 23669
(757) 826-5000
(757) 826-5936 (FAX)
tclancy@clancywalterlaw.com

9

## **CERTIFICATE**

I, Timothy G. Clancy, do hereby certify that on the __8th__ day of December, 2022, I

electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will

send a notification of such filing (NEF) to the following:

>   Brian J. Samuels, Esquire
>   Managing Assistant United States Attorney
>   Office of the United States Attorney
>   721 Lakefront Commons, Suite 300
>   Newport News, VA 23606
>   brian.samuels@usdoj.gov
>
>   D. Mack Coleman, Esquire
>   Assistant United States Attorney
>   Office of the United States Attorney
>   721 Lakefront Commons, Suite 300
>   Newport News, VA 23606
>   mack.coleman@usdoj.gov

I further hereby certify that on the __8th__ day of December, 2022, I emailed and mailed by

U.S. mail a true and exact copy of the foregoing to the following non-filing user:

>   Patrick Raible
>   United States Probation Office
>   Eastern District of Virginia, Richmond Division
>   United States Courthouse
>   701 East Broad Street, Suite 1150
>   Richmond, Virginia 23219
>   Patrick_Raible@vaep.uscourts.gov

>                                        /s/
>   _____
>   Timothy G. Clancy (VSB #25117)
>   Counsel for Defendant Nosuk Kim
>   CLANCY & WALTER, P.L.L.C.
>   544 Settlers Landing Road
>   Hampton, Virginia 23669
>   (757) 826-5000
>   (757) 826-5936 (FAX)
>   tclancy@clancywalterlaw.com

| DEFENDANT | CHARGE(S) AT CONVICTION | SENTENCE |
| --- | --- | --- |
| Iris Kim, Inc. a/k/a I-Tek | 18 U.S.C. § 371 - Conspiracy to Defraud and to Commit Offenses Against the United States<br><br>18 U.S.C. § § 542 and 2 - Entry of Goods by False Statements | 2 years probation; $400 special assessment<br><br>2 years probation; $400 special assessment $400 |
| Beyung S. Kim | 18 U.S.C. § 371 - Conspiracy to Defraud and to Commit Offenses Against the United States<br><br>18 U.S.C. § § 542 and 2 - Entry of Goods by False Statements | 58 months imprisonment concurrent; 3 years supervised release; $100 special assessment; Restitution: $7,625,557.91<br><br>10 months imprisonment; 1 year supervised release concurrent; $100 special assessment |
| Seung Kim | 18 U.S.C. § 371 - Conspiracy to Defraud and to Commit Offenses Against the United States | 5 months imprisonment; 3 years supervised release; $100 special assessment; restitution: $36,605.23 |
| Dongjin Park | 18 U.S.C. § 371 - Conspiracy to Defraud and to Commit Offenses Against the United States | 31 months imprisonment; 3 years supervised release; $100 special assessment; restitution: $475,338.81 |
| Chang You | 18 U.S.C. § 371 - Conspiracy to Defraud and to Commit Offenses Against the United States | 5 months imprisonment; 3 years supervised release; $100 special assessment; restitution: $247,157.32 |
| Pyongkon Pak | 18 U.S.C. § 371 - Conspiracy to Defraud and to Commit Offenses Against the United States | 32 months imprisonment; 3 years supervised release; $25.00 special assessment; restitution: $147,562.31 |
| Li-Ling Tu | Not yet arrested | |